UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM C. SWAN,

      Plaintiff,

v.                                                   Case No. 17-CV-1472

SERGEANT STACEY BUTKE,
CORRECTIONAL OFFICER KLOWEIN,
CORRECTIONAL OFFICER BILLINGTON,
ARAMARK FOOD SERVICE OFFICIAL DEBBIE, and
ARAMARK FOOD SERVICE OFFICIAL JOYCE,

      Defendants.

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING AS MOOT THE PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 3) AND SCREENING THE PLAINTIFF'S COMPLAINT (DKT. NO. 1)**

On October 26, 2017, the plaintiff filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to and negligent in their handling of his serious medical needs. Dkt. No. 1. He also filed two motions for leave to proceed without prepayment of the filing fee. Dkt. Nos. 2, 3. This decision resolves the plaintiff's motions and screens his complaint.

This case currently is assigned to Magistrate Judge William E. Duffin. Although the plaintiff has consented to Judge Duffin hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent, because until now, the court has not screened the complaint and

decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the district court judge will screen the complaint.

I.     **Motion to Proceed without Prepayment of the Filing Fee**

The Prison Litigation Reform Act (PLRA) gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee. On October 26, 2017, the plaintiff filed two motions to proceed without prepayment of the filing fee under 28 U.S.C. §1915. On October 30, 2017, Judge Duffin ordered him to pay an initial partial filing fee of $2.02. Dkt. No. 6. The court received the partial filing fee on November 14, 2017. Because the plaintiff has paid the partial filing fee, the court will grant his first motion to proceed without prepaying the filing fee, dkt. no. 26, and will require him to pay the remainder of the $350 filing fee over time as explained at the end of this decision. The court will deny as moot the plaintiff's second motion to proceed without prepaying the filing fee. Dkt. No. 3.

II.    **Screening of the Complaint**

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint, or part of it, if the prisoner has raised claims that are legally "frivolous or

2

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint that offers mere "labels and conclusions," however, or a "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must

contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, district courts follow the principles in Twombly, by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. Second, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however

inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  Factual Allegations

The plaintiff has sued "Walworth County Jail officials," Sgt. Stacey Butke, Officer Klowein, Officer Billington, Aramark Food Service officials, Debbie LNU and Joyce LNU. Dkt. No. 1 at 1.

The plaintiff alleges that on July 24, 2016, while he was incarcerated at the Walworth County Jail (WCJ), he was working in the main kitchen at around 11:20 in the morning. Id. at 3. He says that Debbie, an Aramark employee[1], ordered him to empty the garbage in the cooking area. Id. The cooking area was new to the plaintiff and unfamiliar to him; he did not receive any new training before being sent to the cooking area. Id. at 5. As the plaintiff was going to get the garbage, he walked past a kettle and slipped on the wet floor, falling into "an open drain pit" which wasn't covered. Id. at 3. He states that the pit was open because another inmate had been cleaning it out, but had been called away to help on the line. Id. The plaintiff says that when he fell into the pit, he "injured his left arm, shoulder, hip and lower back." Id. He says that other inmates saw the incident, and that the incident was recorded on a nearby security camera. Id.

After the plaintiff fell into the pit, two inmates lifted him out, and immediately notified Supervisor Joyce. Id. Supervisor Joyce ordered the

---

[1]The plaintiff explains that WCJ had hired Aramark Food Service to prepare jail meals and manage the kitchen. Dkt. No. 1 at 3.

plaintiff to back to his dorm immediately. Id. at 5. The plaintiff says that jail officer Billington "was notified" that the plaintiff had fallen into the pit, and went to the dorm to talk with the plaintiff. Billington decided that the plaintiff was hurt badly enough that the medical staff should see him. Billington notified "Nurse Joy," who examined the plaintiff. Id. at 3. The nurse ordered an ice pack, and arranged to have x-rays taken of the plaintiff's injured areas. Id. at 4. The plaintiff asserts that a medical report from Aurora showed that he had a rotator cuff injury, and that he needed an ice bag. Id. at 5. He claims, however, that Officer Klowein[2] refused to give him an ice bag when he asked for one. Id. He also says that he "was advised"—he does not say by whom—to wear a sling, but that "back at the jail, he was not permitted one of th[o]se either." Id.

On August 3, 2016, the plaintiff was taken to Aurora Medical Center and seen by an orthopedic specialist who gave him a cortisone injection and prescribed physical therapy. Id. at 6. The plaintiff indicates that while at WCJ, he received physical therapy three times, but that it "did not help much, if any." Id. at 5.

In August 2016, the plaintiff was transferred to Fox Lake Correctional Institution. Id. at 6. While there, the plaintiff was taken to Waupun Hospital where he had an MRI conducted that revealed his rotator cuff injury. Id. In February 2017, the plaintiff had another, "more intensified" MRI done and was

---
[2] The plaintiff spells this defendant's name as "Kloweing" in other places in the complaint.

told he would need surgery on his shoulder. Id. The plaintiff's surgery was scheduled for April 2017. Id. In May 2017, another MRI showed "impingement syndrome," which the plaintiff indicates can happen as a result of a fall. Id. He received physical therapy for this. Id.

Because the plaintiff was experiencing tingling in his hand and fingers, at some point he was referred to a neurologist. Id. The neurologist stated the plaintiff might have permanent nerve damage. Id.

The plaintiff says that Aramark created an incident report. Id. at 3. He says that the incident report does not agree with a report by Stacey Butke (who appears to be a sergeant at WCJ). Id. at 4. Butke's report stated that the plaintiff "wanted to keep working." Id. The Aramark report also did not agree with the fact that "officer Billington promptly went to check on [the plaintiff], where he found [the plaintiff] had returned to his dorm and was visibly expressing great pain and discomfort." Id.

The plaintiff asks for compensatory and punitive damages. Id. at 7.

B.   The Court's Analysis

The plaintiff alleges that the defendants violated his rights under the Eighth and Fourteenth Amendments, and that they were deliberately indifferent to his serious medical needs. Id. He also alleges that the defendants were negligent because they did not supervise whoever left the drain cover off, and because they instructed the plaintiff to go into an area in which he'd not been trained.

7

1.  *Deliberate Indifference Claims*

The plaintiff does not state whether he was a pretrial detainee or a convicted prisoner at the time he suffered his injury. As a pretrial detainee, the plaintiff would have been protected by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's prohibition against cruel and unusual punishment, which applies only to convicted persons. See Estate of Cole v. Fromm, 94 F.3d 254, 259 n.1 (7th Cir. 1996). But because courts analyze claims brought under the Fourteenth Amendment using the Eighth Amendment test, the court may screen the plaintiff's complaint without knowing this information. See Higgins v. Correctional Med. Servs. of Illinois, Inc., 178 F.3d 508, 511 (7th Cir. 1999); see also Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997) (indicating that the Eighth Amendment standard for persons who have been convicted is also the applicable standard for pretrial detainees under the Fourteenth Amendment).

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir. 2009) (quoting Estelle, 429 U.S. at 103). To state a claim for deliberate indifference, a plaintiff must alleged two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011). "The official must have subjective knowledge of the risk to the inmate's

8

health, and the official also must disregard that risk." Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010). Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" Id. (quoting Farmer, 511 U.S. at 843).

The court finds that the plaintiff has alleged an objectively serious medical condition—the injuries he suffered as a result of falling into the open drain pit. The defendants who interacted with the plaintiff after he fell into the drain pit appear to have been defendants Joyce, Butke, Billington and Klowein. The court must determine whether the plaintiff has alleged sufficient facts to indicate that any of these defendants were deliberately indifferent to that serious medical need.

It is not clear whether Joyce was an employee of the jail or of Aramark. Regardless, the plaintiff alleges only that Joyce ordered him back to his dorm immediately. It is not clear how this constitutes deliberate indifference. The plaintiff does not state whether Joyce knew that he was in pain, or that he had hurt himself. Even if Joyce did know that the plaintiff had hurt himself, ordering him to stop working and sending him back to the dorm would not show indifference. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Joyce.

The plaintiff made no claims against Butke, despite naming Butke as a defendant. The only reference to Butke in the complaint is the plaintiff's

9

statement that Butke wrote a report that stated that the plaintiff wanted to keep working. Writing a report does not constitute deliberate indifference to a serious medical need, and the court will not allow the plaintiff to proceed on a deliberate indifference claim against Butke.

The plaintiff alleges that Billington "promptly" came to see him in the dorm, found him in great pain and discomfort, and decided that he needed medical attention. Billington notified Nurse Joy, who examined the plaintiff and prescribed treatment. The court does not understand why the plaintiff named Billington as a defendant. Far from being deliberately indifferent to his medical needs, Billington responded to the plaintiff's medical needs by getting him help. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Billington.

The plaintiff alleges that both Nurse Joy and Aurora medical staff prescribed application of an ice bag for his shoulder. He says that Klowein refused to provide him with that ice bag. It is not clear from the complaint whether Klowein knew about the prescriptions, or how many times he refused the plaintiff an ice bag. But at this early stage, the court finds that the plaintiff has alleged sufficient facts to allow him to proceed against Klowein on a deliberate indifference claim. See Evans v. Brown, No. 15 C 2295, 2015 WL 7568460, at *2 (N.D. Ill. Nov. 25, 2015) (allegation of failure to provide prescribed ice chips for dialysis pain was enough to state a deliberate indifference claim).

2. *Conditions of Confinement Claims*

The plaintiff does not specifically allege that the conditions of his confinement violated the constitution. But the Eighth Amendment "imposes upon jail officials the duty to 'provide humane conditions of confinement.'" Henderson v. Sheahan, 196 F.3d 839, 844 (7th Cir. 1999) (quoting Farmer, 511 U.S. at 832. Humane conditions of confinement include "adequate . . . protection . . . ." Id. (quoting Oliver v. Deen, 77 F.3d 156, 159 (7th Cir. 1996)). A plaintiff alleging a conditions-of-confinement claim first must show that the constitutional deprivation of safe conditions must be "objectively, 'sufficiently serious.'" Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001) (quoting Henderson, 196 F.3d at 845)). Next, the plaintiff must show that the defendant had "*actual* knowledge of *impending* harm *easily* preventable." Id., 256 F.3d at 683 (quoting Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992)).

The only defendant whom the plaintiff identifies by name as putting him at risk is Aramark employee Debbie. The plaintiff alleges that Debbie sent him from the main kitchen area to the cooking area even though he was not familiar with that area and did not have training in that area. At this early stage, the court finds that the plaintiff has alleged sufficient facts to allow him to proceed against Debbie on a conditions-of-confinement claim.

The plaintiff also refers to unnamed WCJ officials and Aramark officials. The plaintiff may not proceed against unnamed defendants.

3. *Negligence Claims*

Finally, the plaintiff asserts that the defendants were negligent because they did not adequately supervise the inmate who left the drain cover off, and instructed the plaintiff to work in an area with which he was not familiar and for which he'd not been trained. But negligent conduct on the part of a state official is insufficient to make out a constitutional violation. Daniels v. Williams, 474 U.S. 327, 331, 333-34 (1986); Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Russ v. Watts, 414 F.3d 783, 788-89 (7th Cir. 2005).

Federal courts hearing a federal claim may, however, entertain state law claims by exercising supplemental jurisdiction over them, but only when the state and federal claims are part of one constitutional "case;" that is, they derive from a "common nucleus of operative fact" and would ordinarily be tried together. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966); Bailey v. City of Chicago, 779 F.3d 689, 696 (7th Cir. 2015) (quoting Groce v. Eli Lilly & Co., 193 F.3d 496 , 500 (7th Cir. 1999)); 28 U.S.C. §1367.

The plaintiff does not say who was responsible for supervising the inmate who left off the drain cover, and does not name that person. But the plaintiff's claim that someone was negligent in sending him into the cooking area without training does relate to his claim that defendant Debbie may have been responsible for unconstitutional conditions of confinement. The court will exercise supplemental jurisdiction over the plaintiff's negligence claim against Debbie.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's second motion for leave to proceed without prepayment of the filing fee. Dkt. No. 3.

The court **DISMISSES** Sergeant Stacey Butke, Officer Billington, and Supervisor Joyce as defendants.

The court **ORDERS** that the United States Marshal shall serve a copy of the complaint and this order on CO Klowein and Aramark employee Debbie under Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that the defendants shall file a responsive pleading to the complaint.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $347.98 balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that the clerk's office shall return this case to Magistrate Judge William E. Duffin for further proceedings.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[3] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he must submit all correspondence and legal material to:

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he does not file documents or take other actions by the deadlines the court sets, the court may dismiss his case for lack of prosecution. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 5th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**